Marine National Exchange Bank and another, Plaintiffs, vs. The State and others, Defendants. [Two appeals.]

*January 7—March 12, 1946.*

For the plaintiffs there was a brief by *Kaumheimer, Alt & Likert, Miller, Mack & Fairchild,* and *Paul R. Newcomb,* all of Milwaukee, and oral argument by *Mr. Newcomb* and *Mr. Leon E. Kaumheimer.*

For the defendants there was a brief by the *Attorney General, James Ward Rector,* deputy attorney general, and *Beatrice Lampert,* assistant attorney general, and oral argument by *Mrs. Lampert.*

BARLOW, J.   Plaintiffs are national banking associations incorporated under the laws of the United States, doing business within the state of Wisconsin.

The statute involved on this appeal is sec. 220.25, as amended by ch. 70, Laws of 1945.   The issues herein are the construction and constitutionality of the statute.   This section, as originally passed in 1935, provided in substance that any fund, funds, or property on deposit with a banking institu-

tion in the name of a person who died intestate without heirs shall escheat to and become the property of the state, and that any person who shall fail to deal with the same for a period of twenty years by adding to or withdrawing therefrom or asserting any claim to the same for such period shall be presumed, unless shown to the contrary, to have died intestate without heirs, or to have abandoned the same. Provision is then made for reports to the secretary of state and directing the secretary of state to have the reports permanently bound with an appropriate reference, the same to be open to public inspection. The attorney general is directed to bring an action in the name of the state in the circuit court for Dane county to have any funds or property which he concludes, or has reason to believe, should be adjudged to be the property of the state, joining all parties in interest, service of process to be either personal service or by publication as therein provided. Under the section as originally passed the funds or property remained in the bank until by judgment of the circuit court for Dane county title vested in the state.

By ch. 70, Laws of 1945, sub. (3a) (a) to (d), inclusive, was added and the words "person or" inserted in the penalty clause in sub. (6). The statute, as amended, became effective April 24, 1945. The amendments require every banking institution in the state to turn over to the state treasurer all funds or other property which have remained inactive or unclaimed for a period of twenty years, pursuant to reports filed according to law. The banking institution is relieved of any liability to the owner of the deposit, and it is provided that "the state shall reimburse any person or banking institution who cannot be relieved of such liability by this section for all liability to the owner of the property or damage incurred by reason of compliance with this section." Provision is made whereby the owner can make claim to the state treasurer for funds so paid to him where judgment of escheat has not been entered.

Plaintiffs attack the constitutionality of the law and contend: (1) The state cannot become a debtor of the owner of deposits and property held by the bank; (2) the state cannot give its credit by assuming the obligation to hold the bank harmless from all damages in turning such deposits and property over to the state treasurer; (3) the requirements of due process are not satisfied. The trial court held the statute to be constitutional, and held that no deposits or other property so held were to be turned over to the state treasurer prior to March 1, 1946.

Turning over dormant property and deposits to the state as required by the statute in question does not make the state a debtor depository engaged in the banking business contrary to sec. 4, art. XI, of the Wisconsin constitution. The statute, as amended, provides a comprehensive plan whereby dormant funds are to be paid to the state treasurer for protective purposes first, and there held for the benefit of the depositor until by judgment of the court they shall escheat to the state, and at such time become a part of the school fund. The state does not thereby become engaged in banking, as it claims no right or interest in the funds except for the purpose of conserving them for the benefit of persons lawfully entitled to them.

It is argued that the provision in sec. 220.25 (3a) (c), Stats., requiring the state to reimburse the person or banking institution liable to the depositor or owner of property, who has turned the same over to the state, is in violation of sec. 3, art. VIII, of the Wisconsin constitution, which provides:

"The credit of the state shall never be given, or loaned, in aid of any individual, association or corporation."

and also in violation of sec. 4, art. VIII, which provides:

"The state shall never contract any public debt except in the cases and manner herein provided."

Provision is made in the statute whereby an owner can make claim to the state treasurer for dormant funds belonging

to him where judgment of escheat has not been entered. The pleadings show that the funds and property involved are not interest bearing, even though they may have been time deposits or interest-bearing deposits at the time they were deposited. The depositor, therefore, would not be entitled to receive from the state or from the original depository any amount in excess of the amount paid in to the state treasurer, which amount he can obtain from the state treasurer upon demand. The condition that the state shall save the bank harmless, therefore, does not constitute the giving of credit nor contracting of a public debt. It was held in *State v. Marshall & Ilsley Bank* (1940), 234 Wis. 375, 291 N. W. 361, that sec. 220.25, Stats. 1939, containing provisions for reimbursement of individual depositors under the escheat provisions of said section, was valid despite the restrictions of art. VIII and art. X of the constitution of the state of Wisconsin. These funds do not become a part of the school fund until the judgment of escheat has been entered, and even then under sub. (5) (d) of the statute any person not appearing in the escheat action can sue to recover such funds or property for a period of five years after the entry of such judgment, and in case such person be an infant or under disability, the period of limitation is extended to one year after the removal of such disability. The commitment here involves only funds derived from these special receipts and is not included within the constitutional restrictions against creation of state indebtedness. *Loomis v. Callahan* (1928), 196 Wis. 518, 220 N. W. 816; *Payne v. Racine* (1935), 217 Wis. 550, 259 N. W. 437; *Flottum v. Cumberland* (1940), 234 Wis. 654, 291 N. W. 777. The special funds are available for any amount which the state may be required to pay from them, and it is considered that there is no violation of the constitutional provisions claimed.

Whether the requirements of due process are complied with presents a more serious question. The state contends that no notice is necessary, but if one is necessary ample notice is pro-

vided in the statute, as under sec. 220.25 (3) (c) within thirty days after January 1st, every five years commencing January 1, 1936, the cashier or managing officer of the bank shall make and return to the secretary of state a sworn statement showing the names of persons who have left on deposit or otherwise any fund, funds, or property, the value of $10 or more, and have not dealt with respect thereto for a period of ten years by adding to or withdrawing therefrom or asserting any claim to such fund, funds, or property for such period, giving the depositor's or owner's name and last-known residence.

Under sub. (3) (b) the same officer shall within thirty days after the 1st of January annually return to the secretary of state a sworn statement showing the names of persons who have left on deposit any fund, funds, or property of the value of $10 or more, and have not dealt with respect thereto for a period of twenty years by adding to or withdrawing therefrom or asserting any claim to such fund, funds, or property unless known to the officer to be living. This statement is to show the amount of deposit, value, and nature of the property, the depositor's name and last-known place of residence, and the report shall be made in duplicate, the duplicate copy to be delivered by the secretary of state to the attorney general immediately upon its receipt.

Sub. (3) (d) requires the secretary of state to have these reports permanently bound with an alphabetical index of depositors or owners and an appropriate reference to the bound reports, the reports and index to be open to public inspection.

Sub. (3) (e) directs a copy of the reports required in sub. (3) (b) and (3) (c), with a notice directed to whom it may concern, requesting all persons having knowledge or information relative to the whereabouts of such depositors or other possible claimants, to give such information to the subscribing officer, to be displayed in a prominent place in such bank for a period of thirty days from date of filing such report,

and also provides that the report filed pursuant to sub. (3) (c) covering ten-year deposits, shall be published once each week for four consecutive weeks in a newspaper having a general circulation in the county where the bank is located.

All of the foregoing subsections were a part of the escheat statute prior to the amendment by ch. 70, Laws of 1945, and were not passed with reference to the turning over of dormant funds or property by banks to the state treasurer.

The right to require banks to pay dormant funds to the state after the expiration of a reasonable length of time was determined in the case of *Provident Savings Institution v. Malone,* 221 U. S. 660, 31 Sup. Ct. 661, 55 L. Ed. 809, but it was there held that before the money can be required to be turned over general proceedings must be instituted in the probate court, and personal notice must be given to the bank, and citation and notice usual in the probate court published so as to give the depositor, if living, and his heirs, if deceased, opportunity to appear and be heard. A court judgment was provided for even though it was not an escheat statute and no title passed to the state by reason of the judgment entered.

California then passed a statute requiring payment of dormant funds to the state at the expiration of twenty years, which provided for suit to be brought by the attorney general, with personal service on the bank and service on other parties in interest by publication of the summons for four weeks in a newspaper of general circulation in the county, terminating in a judgment requiring the bank to pay the deposits to the state treasurer. The court in *Security Savings Bank v. California* (1923), 263 U. S. 282, 44 Sup. Ct. 108, 68 L. Ed. 301, held the statute constitutional, and said that the two essentials of jurisdiction in proceedings by the state for unclaimed deposits, in order that the depositor may be bound and the bank protected, are seizure of the *res* at the beginning of the suit, and a reasonable notice and opportunity to be heard accorded the depositors.

The next case on the subject is *Anderson Nat. Bank v. Reeves,* 293 Ky. 735, 170 S. W. (2d) 350, construing a statute from which our statute was copied, at least in part. It was there contended that a judgment was necessary before the bank could be required to pay the funds into the treasury. The statute provided that a copy of the notice had to be furnished to the sheriff, who was required to post the same on the courthouse door and make proof of posting, and six weeks thereafter dormant funds remaining in the bank were to be paid over to the state treasurer. This statute was also construed in *Anderson Nat. Bank v. Luckett,* 321 U. S. 233, 242, 64 Sup. Ct. 599, 88 L. Ed. 692. In *Anderson Nat. Bank v. Reeves, supra,* it was held that no judgment was necessary, as the depositor was not deprived of his property rights, as he would be in an escheat action, but in *Anderson Nat. Bank v. Luckett, supra,* it was held that a proper notice must be given so that the depositor would have an opportunity to be heard, the court saying :

"But if the statute is deficient in its provisions for notice and opportunity for hearing so that the depositors would not be bound by any proceedings taken under it, the bank would be entitled to raise the question whether its obligation to the depositors would be discharged by payment of the deposits to the state. Hence our inquiry must be directed to the question whether the procedure by which the state undertakes to acquire the depositors' right to demand payment of the deposits was upon adequate notice to them and opportunity for them to be heard."

The court then held that the notice on the courthouse door was the giving of notice of proceedings within the county according to an ancient and time-honored custom in Kentucky, and held that upon payment of deposits to the state the bank's obligation was discharged. This was also held in *State v. Northwestern Bank of Minneapolis* (1945), 219 Minn. 471, 18 N. W. (2d) 569.

Under the Wisconsin statute we have no notice, unless it can be said that the notice published ten years prior to the expiration of the twenty-year period is a notice, and we cannot so hold, or unless the posting of the notice in the bank, requesting that persons having information as to the whereabouts of depositors or their heirs inform the bank officers, is a sufficient notice. In *Anderson Nat. Bank v. Luckett, supra,* the court held that the posting of the notice, together with the statute, of which the depositor is charged with knowledge, constituted sufficient notice to comply with due process. In the statute under consideration we have no notice of any kind except a request for information as to the whereabouts of the depositors named, posted in the bank. The sworn information filed with the secretary of state and the attorney general is solely for the purpose of furnishing necessary information to the state to warrant the attorney general to proceed in an escheat action. The usual form of notice provided by statute in Wisconsin is by personal service on the party in interest or on some member of suitable age of his household, by publication, or by posting in public places. The statute attempts to relieve the bank of liability to the depositors and thus deprive the creditor of property rights against it.

To require the bank to pay these dormant funds to the state treasurer and still be liable to the depositor is not constitutional, when it is evident that the legislature intended to relieve the bank from this liability, which it failed to do. It is considered that the state cannot require the payment of dormant funds or the delivery of dormant property to the state treasurer by the holder thereof without giving due notice to the depositor or the owner of the property, and that due notice not being provided for in the statute in question the portion thereof requiring payment of dormant funds or delivery of dormant property to the state treasurer is unconstitutional.

*By the Court.*—Judgment reversed, and cause remanded with instructions to enter judgment in accordance with this opinion.